# UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

|  | 100 EAST FIFTH STREET, ROOM 540 |  |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed:  January 07, 2020

Ms. Heather Moore Collins
Ms. Paige Lyle
Collins & Hunter, 7000 Executive Center Drive
Building Two Suite 320
Nashville, TN 37027

Ms. Cassandra Crane
Farrar & Bates
211 Seventh Avenue, N., Suite 500
Nashville, TN 37219

Re:  Case No. 19-5202, *Cynthia Miles v. South Central Human Resource*
     Originating Case No. : 4:17-cv-00043

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                     Yours very truly,

                     Deborah S. Hunt, Clerk

                     Cathryn Lovely
                     Deputy Clerk

cc:  Mr. John L. Medearis

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0005p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

───────────────

CYNTHIA MILES,

        *Plaintiff-Appellant,*

    *v.*

SOUTH CENTRAL HUMAN RESOURCE AGENCY, INC.,

        *Defendant-Appellee.*

No. 19-5202

Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.
No. 4:17-cv-00043—Harry S. Mattice, Jr., District Judge.

Decided and Filed:  January 7, 2020

Before: McKEAGUE, BUSH, and NALBANDIAN, Circuit Judges.

───────────────

### COUNSEL

**ON BRIEF:**  Heather Moore Collins, Paige Lyle, COLLINS & HUNTER PLLC, Nashville, Tennessee, for Appellant.  Cassandra M. Crane, FARRAR & BATES, LLP, Nashville, Tennessee, for Appellee.

───────────────

### OPINION

───────────────

NALBANDIAN, Circuit Judge.  As our sister circuit put it, an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."  *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984). The ADEA only prevents employers from terminating an employee "because of such individual's age."  29 U.S.C. § 623(a)(1).  Cynthia Miles was unhappy with her at-will termination, so she filed this ADEA claim.  Because she has

No. 19-5202        *Miles v. S. Central Human Resource Agency. Inc.*        Page 2

failed to establish a genuine dispute as to pretext, we affirm the grant of summary judgment to her former employer, South Central Human Resource Agency, Inc. ("SCHRA").

I.

Miles began her career with SCHRA in 1982 as a seasonal employee. SCHRA is a Tennessee public nonprofit organization that provides low-income individuals with a host of services through its partnership with local, state, and federal resources. After many promotions and reassignments, Miles became Community Services Director in 2012. The Community Services Director reports directly to the Executive Director—SCHRA's Chief Executive—and is responsible for overseeing six programs: Community Services Block Grant, Low Income Energy Assistance, Social Services Block Grant, Weatherization, Representative Payee, and DUI School. Each of these programs, except for DUI school, has its own Director, who reports to the Community Services Director. And in total, the Community Services Director supervises between thirty-five and forty SCHRA employees.

In 2011, the Tennessee Comptroller, Tennessee Bureau of Investigation, and United States Department of Energy's Office of Inspector General began to investigate SCHRA. The investigation ultimately revealed several deficiencies, including some within programs directly supervised by Miles. The Comptroller's report noted "[q]uestionable payments totaling $134,992 [] in the Head Start and Weatherization projects, plus abusive business practices [between] a contractor and the agency" and "[m]ultiple deficiencies [] in the Community Representative Payee Program." (R. 31-7, Investigative Report at PageID # 119.) After the Comptroller provided the report to SCHRA, but before public release of the report, Executive Director James Coy Anderson resigned. SCHRA's Board of Directors selected Paul Rosson as interim, and ultimately permanent, Executive Director.

Rosson reviewed the Comptroller's findings and the responses provided by SCHRA employees during the investigation. He was especially concerned that Jim Reynolds, Director of Fiscal Operations, and Lisa Williams, Assistant Director of Fiscal Operations, admitted to wrongdoing. So he recommended their termination to SCHRA's Board of Directors. The Board accepted these recommendations and terminated both employees on April 5, 2016.

No. 19-5202          *Miles v. S. Central Human Resource Agency. Inc.*          Page 3

Ten days later, Rosson terminated Miles. At the time of termination, Rosson told Miles that she was terminated "at-will," "without notice and without reason." (R. 31-8, Separation Notice at PageID # 150; R. 31-9, Termination Letter at PageID # 151.) Shortly after her firing, Miles sent several emails to Rosson and other SCHRA employees saying that she believed SCHRA fired her because of the successful and nefarious efforts of her subordinates, and that she intended vindictively to sue SCHRA to impose large legal defense costs on the agency and the individuals.

This case began when Miles filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). In response to that charge, SCHRA, for the first time, provided Miles with reasons for her termination—her implication in misconduct by the Comptroller's report and her toxic relationship with her subordinates. The EEOC granted Miles a right to sue under the ADEA and she filed her complaint in district court. During discovery, SCHRA reaffirmed that it terminated Miles because of her implication in misconduct by the Comptroller's report and her toxic relationship with her subordinates. SCHRA filed a motion for summary judgment, which the trial court granted. This appeal follows.

## II.

We review a district court's grant of summary judgment de novo to determine whether there is a genuine dispute as to any material fact. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). The ADEA prevents employers from terminating an employee "because of such individual's age." 29 U.S.C. § 623(a)(1). In interpreting that language this court has stated: "it is not sufficient for the plaintiff to show that age was a motivating factor in the adverse action; rather, the ADEA's 'because of' language requires that a plaintiff 'prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the "but-for" cause of the challenged employer decision.'" *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)). Miles does not try to satisfy her burden with direct evidence. Instead, she relies on circumstantial, or indirect, evidence. In evaluating indirect evidence claims under the ADEA, this court uses the well-established *McDonnell Douglas* burden-shifting framework. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006).

No. 19-5202     *Miles v. S. Central Human Resource Agency. Inc.*     Page 4

*McDonnell Douglas* first requires the plaintiff to establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If she can, the burden shifts to the defendant, who must produce legitimate, nondiscriminatory reasons for the adverse employment action. *Id.* And if the employer can produce those reasons, the burden shifts back to the plaintiff to establish that the proffered reasons are simply pretext for age discrimination. *Id.* at 804. If the plaintiff satisfies this third step, the factfinder may reasonably infer discrimination. *Moffat v. Wal-Mart Stores, Inc.*, 624 F. App'x 341, 349 (6th Cir. 2015). SCHRA concedes that Miles can establish a prima facie case of age discrimination. (Appellee's Br. at 21 n.5.) And Miles does not contest the legitimacy or nondiscriminatory nature of the reasons SCHRA offers as motivation for her firing. So this appeal presents one question: is there a genuine dispute about whether SCHRA's proffered rationales for Miles's termination were pretextual?

To satisfy her burden and survive summary judgment, Miles must "produce sufficient evidence from which a jury could reasonably reject [SCHRA's] explanation of why it fired her." *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citation omitted). This "is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id.* at 400 n.4. And ultimately, this burden merges with Miles's overall burden of proving discrimination. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011).

Plaintiffs typically show pretext in one of three ways: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that the proffered reasons were insufficient to motivate the employer's action." *Chen*, 580 F.3d at 400. But these are not the only ways that a plaintiff can establish pretext; these three categories are simply a "convenient way of marshaling evidence and focusing it on the ultimate inquiry: 'did the employer fire the employee for the stated reason or not?'" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *Chen*, 580 F.3d at 400). So plaintiffs remain free to pursue arguments outside these three categories. Even so, a plaintiff must articulate some cognizable explanation of how the evidence she has put forth establishes pretext. Miles fails to do this. Instead, she simply identifies what she perceives to be errors in the district court's decision making. That said, her arguments, in effect, cover all three of the typical pretext

No. 19-5202      *Miles v. S. Central Human Resource Agency. Inc.*      Page 5

categories, as well as several general complaints about her termination that she views as establishing pretext.  We discuss each category in turn.

A.

Miles first argues that there is no basis in fact for either of SCHRA's rationales for her termination.  She alleges that Rosson could not provide any specific examples of her toxic behavior in his deposition, that she never received any formal discipline for toxic behavior, and that her personnel file contained no disciplinary write-ups or references to toxic behavior.  She also argues that because the Comptroller's report fails to mention her by name, SCHRA's contention that it fired her because that report implicated her is not based in fact. Problematic for Miles is that her response to SCHRA's motion for summary judgment disclaimed any contest to the factual bases of SCHRA's rationales.[1]  (R. 33, Pl.'s Mem. Of Law In Opp'n To Def.'s Mot. For Summ. J. at PageID # 335 ("Miles seeks to establish pretext under the second or third method of proof, *i.e.*, that the reasons proffered by SCHRA did not motivate the termination or were insufficient to motivate the termination."); R. 43, Mem. Op. at PageID # 900 ("Plaintiff raises a number of issues regarding this justification, but first it is important to note what she does not assert.  She *does not* contend Rosson's justifications are 'untrue,' rather she claims it is her intent to merely rebut the justifications by demonstrating that they did not actually motivate him in firing her and/or that the justifications were insufficient to motivate her termination.").)  This court does not consider issues raised for the first time on appeal.  *Taft Broad. Co. v. United States*, 929 F.2d 240, 243–44 (6th Cir. 1991).  Even so, Miles's arguments fail.

For a plaintiff's challenge to the factual basis of an employer's proffered termination rationale to establish pretext, the plaintiff must provide evidence that the employer's allegations never happened.  *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012).  It is true that the Comptroller's report does not mention Miles by name.  But this hardly means that the report did not implicate her.  It's undisputed that Miles oversaw the Weatherization and Community Representative Payee programs.   And it's similarly undisputed that the Comptroller's report alleged wrongdoing in these programs.  As the Director responsible for

---

[1]But as the district court noted, Miles's arguments below "only regard how [the toxic demeanor rationale] is not supported by the facts."  (R. 43, Mem. Op. at PageID # 908.)

oversight of programs implicated in wrongdoing by the Comptroller's report, Miles cannot argue that the report failed to implicate her simply because it does not mention her name. And rather than putting forth evidence that challenges whether the report implicated these programs, or that she was responsible for their oversight—as she must to succeed—she concedes these facts. No reasonable juror could find that this argument establishes pretext.[2]

Miles's argument that the facts do not support her having a toxic relationship with her subordinates is similarly lacking. She first tries to undermine Rosson's testimony that he received many complaints from Miles's subordinates about her poor treatment of them by calling that testimony hearsay and pointing to Rosson's failure to provide examples of the alleged behavior. But Rosson's testimony is not hearsay because it was not offered for the truth of the matter asserted. Fed. R. Evid. 801(c). SCHRA did not offer Rosson's testimony to show that Miles in fact treated her subordinates poorly. It did so to show that her subordinates lodged these complaints with Rosson. *See* 2 McCormick on Evidence § 249 (7th ed. 2013) ("A statement that D made a statement to X is not subject to attack as hearsay when its purpose is to establish the state of mind thereby induced in X, such as receiving notice or having knowledge . . . ."). And that Rosson could not provide specific examples of Miles's toxic demeanor shows only that he did not investigate these complaints—not that the subordinates never made them.[3]

Miles next contends that she had a clean, official record regarding complaints from subordinates pre-Rosson. But Miles's clean record fails to establish a dispute as to pretext for the same reason as Rosson's inability to point to specific examples of Miles's toxic personality— it in no way proves that Miles's subordinates never complained to Rosson. For many reasons,

---

[2]Miles argues that SCHRA's proffered justification is undercut because she, at Rosson's request, was compiling information for the Report as late as March 31, 2016. She suggests that Rosson would not have allowed her to continue this work if Rosson believed she was implicated in the investigation. Contrary to Miles's argument, it does not "def[y] logic" that Rosson allowed her to work on these responses through this timeframe. SCHRA did not hire Rosson as interim Executive Director until the end of February, when Miles was already providing assistance for the Report. And Rosson did not receive the pre-released copy of the Report until sometime in March. He relieved Miles from her responsibilities for the Report shortly thereafter. Thus, Miles's involvement with preparing the Report does not necessarily establish her innocence.

[3]Miles also argues that inadmissible hearsay undergirds SCHRA's other rationale—that she was terminated because the Comptroller's report implicated her. But any statement made to Rosson by a Comptroller investigator would not be hearsay for the same reasons set forth here. And the truth of that assertion is independently established by the report itself anyway.

Miles's subordinates may have felt comfortable complaining to Rosson but not the former Executive Director, the former Executive Director might have received complaints but not noted them in Miles's record, or Miles's subordinates might not have had a reason to complain until Rosson took over. But none of those reasons matter here. What matters is that Miles has failed to put forth any evidence showing that her subordinates did not complain to Rosson about her toxic personality. Terminating an employee only because of complaints from her subordinates—without investigating the merits of those complaints—may be unwise, but that's not the question here.[4]

To establish pretext by contesting the factual bases for SCHRA's proffered termination rationales, Miles must show that the facts underlying her employer's allegations never occurred. *See Chattman*, 686 F.3d at 349. Because she fails to put forth that evidence, no reasonable juror could conclude that SCHRA's proffered rationales for terminating Miles are not based in fact.

## B.

Miles's second claim is that even if true, her implication in the Comptroller's report did not actually motivate her termination. She argues that SCHRA's shifting rationales and earlier firing of Williams and Reynolds—whom the report also implicated—show that SCHRA could not have fired her for its proffered reasons. But SCHRA did not shift its rationales and there are too many differences between the circumstances of Miles's termination and Williams and

---

[4]And for what it's worth, there is evidence that Miles's record was not as clean as she portrays it. In 2015, Dee Dee Sneed, an employee under the supervision of Miles, filed a grievance against Miles, alleging that Miles was unprofessional, disrespectful, argumentative, and belligerent. Shortly after her termination, Miles also sent several emails to SCHRA employees blaming her poor relationship with her subordinates for her termination. These emails explain how Miles believed that Sneed had been angling to get her fired, how some of Miles's subordinates assisted Sneed "carry out her mission," how Miles had saved a text message in which a subordinate called her "a total bitch," and how a "click [sic]" of Miles's subordinates would be happy once Miles was fired. (R. 31-12, Ex. L at 1–2; R. 31-13, Ex. M at 1; R. 31-14, Ex. N at 1; R. 31-15, Ex. O at 1.) And in her email to SCHRA employee Teresa Swafford, Miles conveys that her motivation for pursuing this litigation is vengeance, rather than remedying discrimination. That email reads: "Hope you have money for a lawyer because I can sue each of you individually in addition to the agency. It might not hold up but it will cost you a truck load to defend yourself. I have someone willing to pay my lawyer fees. Do you????" (R. 31-15, Ex. O at 1.)

No. 19-5202          *Miles v. S. Central Human Resource Agency. Inc.*          Page 8

Reynolds's terminations for the comparison to be meaningful.  So these arguments fail to establish a genuine dispute as to pretext.[5]

True, under this circuit's precedent, an employer's shifting termination rationales are evidence that the proffered rationale may not have been the true motivation for the employer's actions.  *See Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002) ("Shifting justifications over time calls the credibility of those justifications into question."); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext.").  So had SCHRA shifted its rationales for Miles's termination, it would be problematic for its case.  But SCHRA at first only told Miles that she was being fired subject to an "at will dismissal," "without notice and without reason."  (R. 31-8, Separation Notice at PageID # 150; R. 31-9, Termination Letter at PageID # 151.)  SCHRA first provided Miles with rationales for her firing in response to her EEOC complaint, and has stuck to the same story ever since. (R. 34-5, Suppl. Position Statement at PageID # 709–10 (listing the rationales for Miles's termination as "inadequate oversight of programs that were the focus of a Tennessee Comptroller of the Treasury investigation" and Rosson's perception of Miles as a "toxic employee based upon concerns raised by Ms. Miles's subordinates, members of SCHRA's Governing Board, and members of the State Comptroller's Office's investigation team."); R. 34-5, SCHRA Resps. to Interrogs. at PageID # 732–33 (same); R. 34-3, Rosson Dep. at PageID # 635 (same).)

Our circuit and others have held that "providing *additional*, non-discriminatory reasons that do not conflict with the one stated at the time of discharge does not constitute shifting justifications."  *MacDonald-Bass v. J.E. Johnson Contracting, Inc.*, 493 F. App'x 718, 726 (6th Cir. 2012) (collecting cases).  SCHRA's proffered rationales do not conflict with the reason stated at the time of discharge because SCHRA provided *no reason* at the time of discharge.

---

[5]SCHRA contends that Miles cannot establish a lack of actual motivation because Rosson held an "honest belief" about Miles's implication in the Comptroller's report and toxic demeanor.  But the "honest belief" rule only applies as a defense to a lack of a factual basis for the legitimate nondiscriminatory reason proffered by the employer.  *See Tingle*, 692 F.3d at 530–31.  In that situation, an employer can defeat a pretext claim by showing that it had an "honest belief" in the nondiscriminatory basis on which it made its adverse employment decision, even if that reason is not based in fact.  *Id.*

No. 19-5202        *Miles v. S. Central Human Resource Agency. Inc.*        Page 9

Conflict inherently involves multiple elements in opposition, but SCHRA has ever only provided one set of rationales for Miles's termination.

Miles next argues that SCHRA's implausible explanation for not providing Miles with a rationale at the time of her firing is evidence of pretext. More specifically, that the confidentiality requirements imposed by Tennessee law did not prevent SCHRA from listing "violation of agency policy" as the rationale for Miles's termination if she was indeed terminated because of implication in misconduct by the Comptroller's report. Nor would they prevent listing "toxic personality" at all. But as the district court noted, nothing in the ADEA requires an employer to justify a termination to the fired employee, even if she is among the protected class. So an employer's explanation for not providing such a rationale cannot alone establish a genuine dispute as to pretext. Even if that explanation is deficient, this sort of pretext-within-pretext analysis does little to move the ball forward in ultimately determining whether SCHRA fired Miles for the proffered reasons.

SCHRA also terminated Lisa Williams and Jim Reynolds because the Comptroller's report implicated them in wrongdoing. But the Board of Directors terminated Williams and Reynolds immediately following the Board's initial review of the Comptroller's findings, ten days before Miles was terminated. And SCHRA told Williams and Reynolds at the time of their firing that their termination was "related to the Comptroller Report," rather than simply being terminated as at-will employees.[6] Miles argues that the differences between the termination of these employees, whom SCHRA undisputedly fired because of their implication in wrongdoing by the Comptroller's investigation, and her termination show that SCHRA could not have fired her for the same reason.

Often, a plaintiff uses comparators to establish a prima facie case of discrimination. This is because one element of the framework used to establish a prima facie case using indirect evidence requires showing that a similarly situated employee outside the protected class was treated differently. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). But as

---

[6] Miles argues that SCHRA provided this statement to Williams and Reynolds in their termination letters. These termination letters are not a part of the record; but the district court assumed these facts were true for summary judgment. We make the same assumption here.

noted, SCHRA concedes that Miles can establish a prima facie case under the ADEA. (Appellee's Br. at 21 n.5.)  So Miles tries to modify the comparator framework to establish pretext.  Rather than showing that a similarly situated employee outside the protected class committed the same misconduct but was not subject to the same consequences—and insinuating that the reason for that disparate treatment is discrimination—Miles points to other employees, Williams and Reynolds, subject to the same adverse employment action, for allegedly the same reason.  She argues that because they were treated differently, the rationale for their termination cannot be the same as the rationale for Miles's termination.[7]  Miles cites no case in which the comparator framework has been applied in this way, but as discussed, there is no rigid framework for establishing pretext.  *See Tingle*, 692 F.3d at 530.  That said, Miles's argument is unavailing because Williams and Reynolds were not similarly situated to Miles.

Miles contends that the ten-day lapse between when SCHRA fired Williams and Reynolds  and when it fired Miles is significant because the information that allegedly led to Miles's termination was available to SCHRA and Rosson when Williams and Reynolds were terminated.  But the undisputed record shows that this was not true.  Miles, in fact, omits the key difference between her termination and Williams and Reynolds's:  Williams and Reynolds admitted to circumventing the financial and personnel controls of SCHRA, both to the Comptroller's investigators and SCHRA's Board of Directors.  Miles made no such admission.  This explains why SCHRA provided Williams and Reynolds the rationales for their firings at that time, while not providing the rationale to Miles.  And Rosson testified that Williams and Reynolds's admission of guilt was key to their immediate termination, while employees who did not admit to wrongdoing required additional vetting to determine whether termination was warranted.  (R. 34-3, Rosson Dep. at PageID #624, 628 (explaining that Williams and Reyonds's admission of guilt set off "a three-alarm fire" but the board was "still vetting other positions," including Miles, to determine their level of responsibility).)  As the district court so aptly put it:

> When the Board informed [Williams and Reynolds] that their termination was related to the Comptroller investigation, it was not revealing information they were unaware of [because the report had not yet been made public].  Further, []

---

[7]Thus, *Mitchell* and this circuit's comparator caselaw are distinguishable.  That said, the factors analyzed there help show whether employees are similarly situated.

> Williams's, Reynolds's, and the Board's knowledge was not exclusively obtained from the investigation but rather from the terminated employees' own admissions. Also due to their prior admissions, disclosing the justifications for their termination to them was unlikely to compromise the on-going investigation. They had no incentive to then go back and cover tracts for the conduct leading to their termination.

(R. 43, Mem. Op. at PageID # 903.) And that Rosson used different procedures to terminate Miles than the Board of Directors used to terminate Williams and Reynolds shows only that different decision makers used different methods to go about their business. *See McMillian v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005) (noting that it is often inappropriate to compare employees who are not subject to the same ultimate decision-maker).

Because SCHRA did not shift its rationale for terminating Miles and because her attempt to use Williams and Reynolds as comparators is unavailing, no reasonable juror could conclude that SCHRA did not actually terminate Miles for the reasons it has proffered.

### C.

Next, Miles argues that her implication in the Comptroller's report was insufficient to motivate termination.[8] She points to Theresa Swafford and Debbie Hopkins—the program coordinators for the Community Representative Payee and Weatherization Programs, respectively. Miles argues that because they were not terminated, despite their mismanagement of programs implicated in misconduct by the Comptroller's report, Miles's mismanagement of the same programs did not warrant termination. To succeed with this type of argument, Miles must provide "evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which [SCHRA] contends motivated its discipline of [Miles]." *Chattman*, 686 F.3d at 349. This analysis is much more like the comparator analysis at the prima facie stage than the prior comparator argument that Miles raises. *See Mitchell*, 964 F.2d at 582–83 (describing the

---

[8]Miles necessarily conceded that implication in the Comptroller's report could be sufficient to warrant dismissal by arguing that this rationale did not actually motivate SCHRA. *See Chattman*, 686 F.3d at 349 (stating that raising such an argument "requires that the plaintiff admit the factual basis underlying the employer's proffered explanation and further admit that such conduct *could motivate dismissal*.") (emphasis added) (cleaned up). We discuss the merits, or lack thereof, of this argument all the same.

No. 19-5202          *Miles v. S. Central Human Resource Agency. Inc.*          Page 12

comparator framework at the prima facie stage as requiring the plaintiff to "produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated [] employees [outside the protected class]"). Thus, our precedent from that context helps determine whether SCHRA's treatment of Swafford and Hopkins is enough evidence for a rational juror to infer that SCHRA's proffered justifications for Miles's termination were pretextual.

Swafford and Hopkins's ages at the time of Miles's termination are unclear from the record. Even so, Swafford and Hopkins's conduct falls so far short of the "substantially identical" requirement that Miles cannot establish a dispute as to pretext through her use of Swafford and Hopkins as comparators, even if they were outside the protected class. Interpreting the similarity requirement at the prima facie stage, this court has held that "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583 (citation omitted). Failure to satisfy these requirements, however, does not automatically destroy comparator status and plaintiffs need not show an exact correlation between themselves and others similarly situated. *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012). But still, the plaintiff must show that she is similar to her proposed comparator in "all relevant respects." *Id*. There is some tension between this liberalized standard at the prima facie stage, in which substantially similar conduct can suffice to establish comparator status, and the pretext stage, which requires "substantially identical conduct." *Compare Chattman*, 686 F.3d at 349, *with Bobo*, 665 F.3d at 751. So even though we note that *Bobo* cautions us not to apply *Mitchell*'s factors formulaically, we remain aware of the closer correlation required for the comparators' conduct at the pretext stage. But for Miles, it doesn't matter which standard is applied because she can't satisfy either.

Looking first to supervisors, the Executive Director supervised Miles, first Anderson and then Rosson. Comparatively, Miles herself supervised Swafford and Hopkins. It is true that Rosson was the ultimate decisionmaker who had the authority to terminate all three employees. But with respect to conduct, Swafford and Hopkins received direction *from Miles*. So Swafford

and Hopkins's mismanagement was at best implicitly endorsed, and at worst directed, by their superior.  Miles has raised no such defense of her misconduct.

Unlike Swafford and Hopkins, Miles was a senior manager who was subject to a different standard of conduct and obligated to perform different functions.  As our sister circuit wrote, "[i]t cannot be said that conduct that might be tolerated or treated with progressive discipline at lower ranks must be similarly accepted from the [highest employee's] advisors, who are held to a higher level of professionalism and who are expected to set the standard of conduct for the [employer]."  *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1281 (11th Cir. 2008).  As Rosson said, the "buck stopped" with Miles, so they chose to fire her. (R. 34-3, Rosson Dep. at PageID # 637.)  Firing the most senior employee responsible for mismanagement while maintaining, or even promoting, their subordinates, despite their involvement in the mismanagement, is an employment practice that is not unorthodox and is in fact common in some industries.  *See, e.g.*, *Michaels v. BJ's Wholesale Club, Inc.*, 604 F. App'x 180, 181 (3d Cir. 2015) (holding that plaintiff failed to establish a prima facie case of retaliation even though "other, lower-ranking personnel also participated in the [misconduct and the employer] decided to terminate only the most senior employees").

Finally, Miles's conduct was worse than that of Swafford or Hopkins.  As noted by the district court, Miles was responsible for the mismanagement of two programs, rather than just one.  And Rosson found that Miles more actively engaged in misconduct, for example providing preferential treatment to an employee's husband in the bidding process.  While Swafford and Hopkins engaged in much more passive misconduct, such as allowing problematic programs to continue.

Even worse for Miles, our cases that have found disparate treatment of comparators enough to establish pretext usually involve circumstances where a company tolerates a certain type of misconduct, leaving it unpunished, but singles out and punishes the plaintiff for that same type of misconduct.  *See, e.g.*, *Chattman*, 686 F.3d at 349–50; *Madden*, 549 F.3d at 676–77. And it makes sense why punishment of an employee for something that usually goes unpunished is evidence of pretext.  But that is not this case.  Miles not only concedes, but tries to use as comparators (Williams and Reynolds), other employees who were terminated for the same

No. 19-5202        *Miles v. S. Central Human Resource Agency. Inc.*        Page 14

reason as her—implication in the Comptroller's report.  *See* Section III.B, *supra*.  In sum, Swafford and Hopkins had a different supervisor than Miles, were held to a different standard of conduct than Miles, and engaged in less severe misconduct than Miles.  Despite these significant differences, Miles has failed to put forth any affirmative evidence that Swafford and Hopkins were similarly situated, let alone that their conduct was substantially identical, to hers.  Thus, no reasonable juror could find that SCHRA's disparate treatment of Swafford and Hopkins establishes that implication of the Community Representative Payee and Weatherization programs in misconduct by the Comptroller's report was insufficient to warrant termination.

D.

Last, Miles raises several general arguments about her termination that she claims establish pretext: that SCHRA replaced her with someone twenty years younger, that Rosson fired many other employees who were older than forty, that SCHRA adopted a strategic plan including discriminatory elements, and that SCHRA failed to follow its internal disciplinary policy in terminating Miles.  Again, we note that plaintiffs are not limited to the three traditional pretext arguments.  *Tingle*, 692 F.3d at 530.  But a plaintiff still must show that the evidence she has put forth establishes a genuine dispute as to pretext.  Miles fails to do so.

That SCHRA replaced Miles with someone twenty years younger alone cannot establish a dispute as to pretext.  Evidence that a company replaced a plaintiff with someone significantly younger is one way to establish a prima facie case of age discrimination under the ADEA.  *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003).  And without establishing a prima facie case of age discrimination, Miles would have never reached the pretext stage.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  But if satisfying the prima facie case requirements alone were enough to establish pretext, then the pretext prong would be superfluous.  *See Alfrey v. AK Steel Corp.*, 211 F. App'x 393, 396 n.3 (6th Cir. 2006) ("Evidence sufficient to establish a *prima facie* case is not necessarily sufficient to establish pretext.").  And here, no reasonable juror could find that replacing Miles with someone twenty years younger alone establishes that SCHRA's rationales for Miles's termination were pretextual.

No. 19-5202            *Miles v. S. Central Human Resource Agency. Inc.*            Page 15

Miles also argues that because five of the nine Program Directors and Rosson's Executive Secretary—all aged forty or higher—were either fired by Rosson or resigned shortly after he took over, there is a pattern of firing older employees.[9] This court has set a high bar to establish pretext with statistical evidence. "To do so, the statistics must show a *significant* disparity and eliminate the most common nondiscriminatory explanations for the disparity." *Bender*, 455 F.3d at 622 (quoting *Segar v. Smith*, 738 F.2d 1249, 1274 (D.C. Cir. 1984)). Miles has failed to clear that high bar. These employees make up only a small part of SCHRA's total workforce and include only a fraction of the employees composing the class protected by the ADEA. And while the record notes that the six employees who were terminated were all older than forty, it lacks the ages of the employees whose files Rosson reviewed but did not terminate. Without this information, there is no way for Miles to establish the "significant disparity" between termination of older employees and retention of younger ones. And some replacements were older than the terminated employee. What's more, among the six terminated employees that Miles puts forward is at least one, Reynolds, whom she concedes SCHRA fired because of his implication in the Comptroller's report—not his age. *See* Part III.B, *supra*. And nowhere does Miles make any argument that "eliminate[s] the most common nondiscriminatory explanations for the disparity." *See Bender*, 455 F.3d at 622. Thus, no reasonable juror could conclude that the statistical evidence put forth by Miles establishes pretext.

The only evidence presented by Miles that explicitly mentions age is SCHRA's 2017 strategic plan, which states as an HR goal "to be the best and have the best people working for SCHRA; providing training and equipping; recruiting; increasing wages to attract the best; technology and innovation to attract young people." (R. 31-17, SCHRA 2017 Strategic Plan at PageID # 210.) A bullet point listed under that goal states a desire to "[p]articipate in collegiate job fairs." (*Id.*) Even viewing this evidence in the light most favorable to Miles—that is, assuming this plan constitutes a stated goal of hiring more young people at SCHRA—it fails to establish a dispute as to pretext.

---

[9]It is not clear from the record that SCHRA fired Rosson's Executive Secretary, Patsy Freeman. But because we must view the facts in the light most favorable to Miles, we assume it did. *See Matsushita Elec. Indus. Co.*, 475 U.S. 574, 587 (1986). It is also unclear that the employees who resigned did so because they feared termination. But we similarly draw this inference in favor of Miles.

If these are discriminatory remarks, they can only serve as pretext if "a person in a position to influence the alleged employment decision" made them and they are not "so isolated or ambiguous as to be nonprobative."[10]  *Diebel v. L & H Res. LLC*, 492 F. App'x 523, 532–33 (6th Cir. 2012) (quoting *Clack v. Rock-Tenn Co.,* 304 F. App'x 399, 405 (6th Cir. 2008)). SCHRA fired Miles in April 2016 before it formulated the strategic plan in October 2016.  So at a minimum six months passed between Miles's termination and SCHRA's articulation of this goal.  In *Diebel*, this court found that a statement made seven months before the adverse employment action was too isolated to establish pretext.  *See Diebel*, 492 F. App'x at 528, 533. Worse for Miles, SCHRA's strategic goal is not even discriminatory.  Even if SCHRA wanted to attract young people, that says *nothing* about terminating older employees.  Miles held a position in senior management, a position that a younger hire would likely be unqualified for.  Especially someone hired from a college job fair.  Because SCHRA's strategic goal is temporally isolated from Miles's termination and does not speak to terminating older employees, it does not establish a genuine dispute as to pretext.

Last, Miles argues that SCHRA's failure to follow its internal discipline policy shows that the reasons proffered for her termination were pretextual.  The policy in place at the time of Miles's termination states that for cases involving serious misconduct, the Program Director should suspend the employee immediately, recommend termination, and conduct an investigation to determine whether the agency should take more action.  Miles alleges that Rosson failed to follow this policy when he terminated her because he failed to first suspend her or conduct an investigation.  But as we have said in the past, "an employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 246 (6th Cir. 2005) (citations omitted). And none of the cases Miles cites say otherwise.  We have held that failure to uniformly apply a progressive discipline policy can be evidence of pretext, especially when the company asserts that policy as a rationale for the employee's termination.  *See Lamar v. Metaldyne Co.*, 240 F. App'x 22, 33 (6th Cir. 2007).  But Miles has shown no employee, let alone one outside the

---

[10]In viewing this evidence in the light most favorable to Miles, we assume that Rosson had some say in crafting this statement because he was present at the strategic planning meeting.

No. 19-5202          *Miles v. S. Central Human Resource Agency. Inc.*          Page 17

protected class, against whom SCHRA's policy was applied differently.  *Cf. Gunn v. Senior Servs. of N. Ky.*, 632 F. App'x 839, 846–47 (6th Cir. 2015) (holding that an employee's bald assertion that an employer applied its internal disciplinary protocols in a discriminatory way could not establish pretext).  And SCHRA did not articulate its progressive discipline policy as a rationale for Miles termination.  SCHRA was also not even bound by its own policy.  As stated in the first paragraph, SCHRA "retain[ed] the right to administer discipline in any manner it [saw] fit," such as "bypass[ing] the disciplinary procedures suggested."  (R. 34-5, Disciplinary Procedures at PageID # 704.)  Thus, even in not complying with the ordinary procedures, SCHRA was still acting within its discretion provided by the policy.  So no reasonable juror could find that the procedures used to terminate Miles establish pretext.

IV.

No reasonable juror could conclude that SCHRA terminated Miles for a reason other than those SCHRA has proffered.  So we **AFFIRM** the district court's grant of summary judgment for SCHRA.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 19-5202

CYNTHIA MILES,

      Plaintiff - Appellant,

      v.

SOUTH CENTRAL HUMAN RESOURCE AGENCY, INC.,

      Defendant - Appellee.

```
┌─────────────────────────────────┐
│            FILED                │
│         Jan 07, 2020            │
│     DEBORAH S. HUNT, Clerk      │
└─────────────────────────────────┘
```

Before:  McKEAGUE, BUSH, and NALBANDIAN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.

      THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

      IN CONSIDERATION THEREOF, it is ORDERED that the district court's grant of summary judgment in favor of South Central Human Resource Agency, Inc. is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk